THE MUTUAL LOAN, SAVINGS AND BUILDING ASSOCIATION &c.

*v.*

RICHARD E. ELWELL et al.

A purchase-money mortgage may be made a second lien by an agreement, made after the sale, between the vendor and another mortgagee of the premises, where the agreement has been consummated by recording the other mortgage before the vendor's, and by the vendor's knowingly acquiescing therein for several years.

Bill to foreclose. On exceptions to master's report.

*Mr. D. J. Pancoast,* for the exceptions.

*Mr. J. W. Westcott, contra.*

THE CHANCELLOR.

The defendant Charles H. Smith sold a lot of land in Haddonfield, in Camden county, to the defendant Richard E. El-

well, for $900, of which the latter was to pay part (about one-half) in cash, and for the rest was to give to him a mortgage on the property. Elwell told Smith that he was going to get the cash from the complainant. He appears to have gone into possession before he got his deed, and to have built a shop upon the property. He applied to the complainant for a loan of $800 on first mortgage on the property before he got his deed, and the loan was made to him accordingly. The deed and the two mortgages, one to Smith for $500 and the other to the complainant for $800, were drawn by Mr. Rowand, a scrivener, who was the treasurer of the complainant. Of the $800 lent by the complainant, Rowand paid Elwell $435, retained $14.50 for drawing and recording the papers, and paid $350.50 to Smith. The money paid Elwell went to satisfy mechanics' claims for building the shop. The deed and mortgages were entrusted to Rowand to be recorded. He caused the complainant's mortgage to be recorded before Smith's. Smith insists that his mortgage is entitled to priority because it was given for purchase money. The master has reported in his favor and the complainant excepts. Rowand swears explicitly and unequivocally that before the papers were drawn he told Smith that the complainant would not advance or loan the money to Elwell except upon a first mortgage, and that for any balance due him (after applying the money borrowed from the complainant to the purchase) he would have to be content with a second lien, and that Smith told him that he would be perfectly satisfied. He also says that he put the complainant's mortgage on record before Smith's, according to agreement or arrangement made between the complainant and Elwell and Smith some time before the papers were executed. The complainant stipulated for a first mortgage of the property for its security, and Elwell agreed to give it. The complainant's mortgage was in fact recorded before Smith's. Smith says he never discovered the fact that it was so recorded before his until about the spring of 1880. Though he says he thought then, and for a long time afterwards, and until after this suit was begun, that the fact that the complainant's mortgage was recorded first gave it priority, notwithstanding the fact that his mortgage was

given for purchase-money; and though he swears he did not agree that the complainant's mortgage should have priority over his, he does not appear ever to have complained because the complainant's mortgage was recorded before his. But, on the other hand, when Elwell ceased paying interest and the complainant threatened to foreclose, he sought to buy its mortgage. When Mr. Lippincott, a member of the association (the complainant), a short time before the testimony was taken before the master, in a conversation with him, referred to the agreement that the complainant's mortgage should have priority over his, he did not deny that the agreement was made, but said he cared nothing about it. The complainant stipulated that its mortgage was to be the first lien, and Rowand, its treasurer, knew it. He swears that Smith agreed to it, and that the complainant's mortgage was first recorded in pursuance of the agreement. Under the circumstances it seems to me very clear that the complainant is entitled to priority. The exception will be allowed, with costs.